# EXHIBIT A

RESERVE BUY OUT AGREEMENT BETWEEN AND AMONG

LIBERTY LIFE ASSURANCE COMPANY OF BOSTON

AND

MCKESSON HBOC, INC.

AND

MCKESSON HBOC, INC. LONG TERM DISABILITY PLAN

AND

MCKESSON HBOC, INC. EMPLOYEES' LONG TERM DISABILITY PLAN TRUST

TO BE EFFECTIVE

JANUARY 1, 2000

LC-0001

LTD CLAIMS BUYOUT AGREEMENT

This Agreement is made and effective this 1st day of January 2000 among Liberty Life Assurance Company of Boston (referred to as "Liberty"), McKesson HBOC, Inc. (referred to as the "Employer"), McKesson HBOC, Inc. Long Term Disability Plan (referred to as the "self-insured Plan" or "Plan") and McKesson HBOC, Inc. Employees' Long Term Disability Plan Trust (referred to as the "Trust").

WHEREAS, the Employer, through the self-insured Plan and Trust, previously has provided long term disability benefit coverage to its eligible employees under the self-insured Plan, a copy of which is attached to and made a part of this Agreement;

WHEREAS, the portion of the self-insured Plan offering long-term disability benefits has been converted to an insured plan with Liberty with respect to claims incurred after January 1, 2000.

WHEREAS, the Employer, the self-insured Plan and Trust wish to have Liberty also assume certain of the Employer's and Trust's remaining long term disability obligations under the self-insured Plan as specified in this Agreement;

WHEREAS, Liberty upon payment of a proper premium from the Employer is willing to insure the Employer, the Plan and Trust against certain claims under the self-insured Plan and to assume the obligations with respect to such claims as specified in this Agreement.

NOW, THEREFORE, in consideration of the mutual agreements herein contained, and other good and valuable consideration, the parties do hereby agree as follows:

Part I - DEFINITIONS

A.  "Claimant" means only those persons listed in Attachment A.

B.  "Plan" means the self-insured Plan currently maintained under the Trust through McKesson HBOC, Inc. which provided long term disability coverage to employees of the Employer and its subsidiaries eligible for coverage under the terms of that Plan which is attached hereto as Exhibit I.

Part II - OBLIGATIONS OF LIBERTY

A.  Upon the Employer's payment of the premium according to Part IV, Liberty will provide long term disability benefits to all Claimants pursuant to the terms of the Plan and the terms of this Agreement.

LC-0002

2

B.  As of the effective date of this Agreement Liberty will make all decisions as to coverage, amount and continued eligibility of benefit payments with respect to all Claimants. Liberty has the right to investigate these claims arising under the Plan and the Employer, the Plan and/or Trust hereby assign to Liberty all of their rights to investigate these claims. The provisions in the Plan regarding proof of loss and notice of claim will apply to such claims. Liberty has the authority in its sole discretion to construe the terms of the Plan and to determine benefit eligibility with respect to persons claiming benefits under the Plan and pursuant to this Agreement. Decisions of Liberty regarding construction of the terms of the Plan and benefit eligibility are conclusive and binding. Liberty will have the sole right to settle any disputed claim when, in its opinion, it is appropriate to do so upon prior notice to the Employer.

For purposes of allocating among the Employer, the Plan, the Trust and Liberty, the benefit of any lump sum award received by a Claimant from other sources such as Social Security which, under the terms of the Plan and/or this Agreement and/or an agreement between the Claimant and Liberty, the Plan, the Employer, and/or the Trust is repaid by the Claimant to Liberty, to the Employer, to the Plan or to the Trust and/or is offset against and reduces future benefit payments under this Agreement, the following rule applies :

Any re-payment by the Claimant of such lump sum award to Liberty, the Employer, the Plan or the Trust shall accrue in its entirety to Liberty.

The party receiving such lump sum re-payment from the Claimant shall pay it to Liberty within 10 business days of receipt.

The Employer, the Plan and/or the Trust hereby assigns to Liberty all of their rights to collect from the Claimant any lump sum awards from other sources to which the Employer and/or Trust was entitled under the terms of the Plan or under the terms of any agreement between the Claimant and the Employer, Trust and/or Plan.

C.  Liberty will undertake the defense of any suit first commenced after the effective date of this Agreement, which is based, or alleged to be based, upon any act or decision of both the Employer and Liberty, or solely Liberty, regarding continued coverage, or level of benefits under the Plan and this Agreement with respect to a Claimant who has claimed benefits under the Plan or this Agreement. Such defense will be at the expense of Liberty, subject to Liberty's right to be indemnified for such expense under Part V of this Agreement. Except as otherwise provided in this Agreement, choice of counsel and settlement of such suit shall be in the discretion of Liberty. Liberty will have the sole right to settle any such suit when, in its informed and good faith opinion, it is

LC-0003

3

appropriate to do so, and, where the suit concerns or involves acts or decisions of the Employer, the Plan and/or Trust, Liberty will notify the Employer prior to such settlement. The Employer, the Plan and/or Trust will reasonably cooperate with Liberty in its defense of such a suit.

Notwithstanding the preceding paragraph, if any suit by a Claimant seeks consequential damages, tort damages, punitive damages or attorney's fees or costs, (referred to as "extra contractual damages") based upon alleged acts or decisions of the Employer, the Plan or Trust; the Employer, at its own expense, may retain counsel and participate in the defense or settlement of its own or the Plan's or the Trust's actions or decisions.

D. In those situations where the Employer has, pursuant to authorization from any Claimant, deducted from the benefits under the Plan an amount for other insurance coverage, Liberty will have discretion whether or not to continue these deductions. In the event that Liberty decides to discontinue these deductions, Liberty will so notify Claimants and the Employer not less than sixty (60) days prior to such discontinuance. In the event that Liberty continues to make these deductions, it is entitled to rely, in good faith, upon information supplied to it by the Employer, the Plan and/or the Trust. Liberty will have no liability for any contractual damages or extra contractual damages resulting from its actions undertaken in good faith upon information provided by the Employer with respect to these deductions.

In the event that a judgment is entered against Liberty for such damages, the Employer will indemnify and hold Liberty harmless to the extent of such damages awarded, or in the case of settlement, the consideration for such damages and for any expenses incurred in connection therewith, including attorney fees. Notwithstanding the preceding sentence, any settlement must receive the prior consent of the Employer, which consent will not be unreasonably withheld.

E. In no event will Liberty have any obligation to review claims with respect to which the Employer, the Plan or the Trustee of the Trust has made a final decision prior to the effective date of this Agreement. For purposes of Part III, such decisions will be deemed decisions by the Employer. Any acts undertaken by the Employer and/or the Trust in investigating or processing claims prior to the effective date of this Agreement will be deemed acts solely of the Employer.

## PART III - OBLIGATIONS OF EMPLOYER AND TRUSTEE

A. The Employer will pay the premiums required by Part IV on or before the dates specified therein.

LC-0004

4

B.  The Employer will defend any suits by a Claimant or other person who claims benefits under the Plan, whenever filed, which are based upon any decision or acts solely by the Employer, the Plan, the Trust, or their agents regarding coverage or level of benefits under the Plan prior to the effective date of this Agreement. The Employer will be responsible for the entire cost of such defenses. Liberty will reasonably cooperate in such defense. The Employer will make any and all decisions regarding management or the defense and settlement of any such suit. The payment of all judgments and settlement agreements resulting from such suit will be the sole responsibility of the Employer.

C.  The Employer represents that, as of the effective date of this Agreement, it has forwarded to Liberty all relevant information in the possession of the Employer, Trust or its agents for the administration of the Plan relating to all Claimants, including but not limited to, all materials in its claim files for such persons.

D.  In consideration for Liberty agreeing to defer collection of the second sum (mentioned below), the Employer shall, at his own expense, cause to have issued an unrestricted, irrevocable Letter Of Credit issued in Liberty's favor and drawn on a bank acceptable to Liberty, in the amount of $7,057,472 by 12:00 PM EST on January 1, 2000 for the term from January 3, 2000 through January 3, 2001. Liberty may invoke the Letter of Credit immediately to its full extent upon the earliest of termination of the Agreement pursuant to Part VII A below or failure by the Employer to pay the second sum specified in Part IV below on or before 12:00PM EST on January 2, 2001. This Letter of Credit will be effective on the effective date of this Agreement and will remain in effect until 12:01AM EST on January 3, 2001. This Agreement will not take effect until the Letter of Credit is placed on file at Liberty's Home Office in Boston, Massachusetts.

## PART IV - PREMIUMS

For all Claimants, (i.e. only those persons listed in Attachment A), the estimated premium is $8,457,472, payable in two lump sums to Liberty. The first sum is $1,400,000 payable on or before 12:00 PM EST on January 3, 2000. The second sum is $7,057,472 payable on or before 12:00 PM EST on January 2, 2001. These amounts are based on (i) census and benefit information known to Liberty on October 14, 1999, and (ii) the composite yield to maturity as of October 14, 1999 for the then current 5 year and 10 year US Treasury Notes (with weighting of 50% and 50 % respectively) using the Treasury yield data for those Notes reported the next following business day in The Wall Street Journal. Liberty reserves the right to audit the census and benefit information on or before January 21, 2000. Liberty will recalculate the composite yield to maturity as of December 31, 1999 for the then current 5 year and 10 year US Treasury Notes (with weighting of 50% and 50 % respectively) using the Treasury yield data for those Notes reported the next following business day in The Wall Street Journal. In the event (i)the census and benefit information changes and/or (ii) the composite yield to

LC-0005

maturity as of December 31, 1999 of the then current 5 and 10 year US Treasury Notes (with weightings of 50% and 50% respectively) changes by more than 15 basis points from the composite yield to maturity calculated as of October 14, 1999, Liberty will recalculate the premium and notify the Employer of any additional premium due on or before January 28, 2000 and the Employer shall pay such additional premium to Liberty on or before February 4, 2000.

## PART V - HOLD HARMLESS AND INDEMNIFICATION

A.  The Employer agrees to indemnify and hold Liberty harmless against any and all loss, liability and expense, including attorney's fees, which result from:

   1. Any act or omission of Liberty related to this Agreement resulting from, arising out of or in connection with negligent, fraudulent, or criminal acts of the Employer, the Plan, the Trust, their employees or agents, acting alone or with others; provided that for this purpose, Liberty will never constitute an agent of the Employer, Plan or Trust and, provided further that this indemnity and hold harmless provision will not apply to any acts of the Employer undertaken with the written approval of Liberty or employees or agents of Liberty unless such written approval was made in reliance upon a negligent, fraudulent or criminal act of the Employer, the Plan, the Trust and/or their employees or agents;

   2. An assessment of income taxes, interest or penalties against Liberty due to Liberty's failure to withhold income taxes from the payment of benefits, according to the terms of the Plan, where Liberty's failure to withhold income taxes, is based upon information provided by the Employer; or

   3. Termination of this Agreement by Liberty pursuant to Part VII.A. of this Agreement.

B.  Liberty will indemnify and hold the Employer, Plan, and the Trust harmless against any and all loss, liability and expense, including attorney's fees, which result from negligent, fraudulent, or criminal acts or omissions of Liberty, its employees or agents, acting alone or with others in performing or failing to perform under this Agreement; provided that for this purpose, the Employer, the Plan, and the Trust will never constitute an agent of Liberty and, provided further that this indemnity and hold harmless provision will not apply to any acts of Liberty undertaken with the written approval of the Employer, the Plan or the Trust unless such written approval was made in reliance upon a negligent, fraudulent or criminal act of Liberty, its directors, officers or employees.

LC-0006

C. Neither Liberty, the Employer, the Plan nor the Trust will bear liability for any extra contractual damages, awarded to any person solely because of the acts, omissions or decisions of the others in administering the person's claim. In the event that a judgment is entered against Liberty, the Employer, the Plan or the Trust for such damages solely attributable to any of the other's acts, omissions or decisions, or a settlement is entered into by Liberty, the Employer, the Plan or Trust; which includes a sum as and for such damages solely attributable to any other's acts, omissions or decisions, then the party whose acts, omissions or decisions were the sole cause of such damages will indemnify and hold the others harmless to the extent of such damages awarded, or in the case of settlement, the consideration for such damages. Notwithstanding the preceding sentence, any settlement must receive the prior consent of the liable party, which consent will not be unreasonably withheld.

D. The Employer, the Plan, the Trust, or Liberty will notify the other as soon as reasonably possible of any suit brought against it by a person who claims benefits under the Plan and this Agreement.

E. In the event a lawsuit is filed against any party entitled to indemnification under this Agreement, that party will give the indemnitor written notice of the lawsuit within five (5) days after the complaint is served. Within seven (7) days after receipt of such notice, the indemnitor will notify the party entitled to indemnification whether or to the extent to which the indemnitor will defend the case, and retain counsel. To the extent and only in the event the indemnitor fails to comply with the indemnification requirements of this Agreement or, except as permitted under Part II.C., the party entitled to indemnification may, at its option, retain counsel and undertake its own defense of the lawsuit; provided, however, that any cost of defending the action, including reasonable attorney's fees, will be borne by the indemnitor.

F. Any party entitled to indemnification will cooperate with the indemnitor in providing evidence and expert witnesses reasonably acceptable to the indemnitor and reasonably required for defending lawsuits subject to indemnification under this Agreement provided, however, that the reasonable costs of such cooperation will be borne by the indemnitor.

G. The provisions of this Part V and the indemnification provisions in Part II.D. remain effective following termination of this Agreement for the period of any applicable statute of limitations for any cause of action subject to indemnification under Part V or Part II.D.

## PART VI - AUDIT

A.  During the term of this Agreement and for two (2) years thereafter, Liberty, the Employer and their respective agents, will have the right to inspect and copy, upon request and reasonable advance notice and during normal business hours or at such other times as may be agreed upon, relevant accounting and administrative books and records. Such information will be provided to each party hereto pursuant to procedures designed to protect the confidentiality of patient health care records in accordance with applicable legal requirements.

## PART VII - TERMINATION

A.  This Agreement may be terminated, at Liberty's sole discretion, in the event that Liberty fails to receive, for whatever reason, payment of the premium as specified in Part IV of this Agreement or in the event that the Employer fails to provide the Letter Of Credit as specified in Part III of this Agreement.

B.  It is expressly agreed by the Employer and Liberty that termination of Long Term Disability Insurance Policy Number GF3-860-038934-02 between Liberty and the Employer, for whatever reason, will not terminate this Agreement.

## PART VIII - MISCELLANEOUS

A.  This Agreement constitutes the entire understanding between the parties hereto and may be amended only by mutual written agreement of the parties. Neither party will have the right or power to assign any rights or duties pursuant to this Agreement without the express written consent of the other party.

B.  If any portion of the Agreement is found invalid, illegal, or contrary to public or regulatory policy, by any court or regulatory body of any competent jurisdiction, the remainder of the Agreement shall remain in full force and effect.

C.  This Agreement is not eligible for dividends from Liberty.

D.  Any notice required or permitted to be given pursuant to this Agreement shall be in writing and shall either be personally delivered or sent by registered or certified mail with the United States Postal Service, return receipt requested, postage prepaid, to the address and to the attention of the person designated in Exhibit II or to such other address and to the attention of such other person as either party may designate by written notice to the other party.

E.  Waiver of a breach of any provision of this Agreement will not be deemed a waiver of any other breach of the same or different provision.

LC-0008

8

F.  Liberty, the Employer and their respective agents shall preserve the confidentiality of any and all information, regardless of form, be it proprietary or otherwise, obtained pursuant to this Agreement. In the event any party receives a request by a third party to obtain, review or otherwise gain access to any or all information obtained or created in fulfillment of this Agreement, the party to whom a request was put shall in no event reveal or otherwise disclose the requested information without first notifying the other party within at least seven (7) days after a request is received. Unless otherwise required by law, the party receiving a request for information shall not reveal such information without the prior consent of the other party. Notwithstanding any provision of this Agreement to the contrary, this paragraph VIII. F. shall survive the termination or invalidation of all or a part of the Agreement.

G.  This Agreement will be governed by the Employee Retirement Income Security Act of 1974, as amended, (ERISA) and to the extent state law is not preempted by ERISA, by the laws of the Commonwealth of Massachusetts as to interpretation, construction and performance.

[ REMAINDER OF PAGE INTENTIONALLY LEFT BLANK - NEXT PAGE IS EXECUTION PAGE ]

LC-0009

IN WITNESS WHEREOF, Liberty, the Employer the Trust and the Plan have caused this Agreement to be executed in quadruplicate as a contract effective on the 1st day of January 2000.

MCKESSON HBOC, INC.
By

_____

_____(Title)

_____(Date)

_____
(Witness Signature)


THE MCKESSON HBOC, INC. LONG TERM DISABILITY PLAN
By

_____

_____(Title)

_____(Date)

_____
(Witness Signature)


THE MCKESSON HBOC, INC. EMPLOYEES' LONG TERM DISABILITY PLAN TRUST
By

_____

_____(Title)

_____(Date)

_____
(Witness Signature)


LIBERTY LIFE ASSURANCE COMPANY OF BOSTON
By

_____
Joseph Poplaski
Vice President and Group Actuary

_____(Date)

_____
(Witness Signature)

LC-0010