**Minutes of the Meeting
of the McKesson Corp.
Employee Benefits Committee**

Pages 44hru 7
and
attachment IIIB

**March 22, 1991**

A meeting of the Employee Benefits Committee was held at the
Company's offices on March 22, 1991.  The meeting convened at
9:00 a.m.  Present from the Committee were Garret A. Scholz,
Chairman, Ronald C. Anderson, Robert C. Johnson, Ivan D.
Meyerson, Nancy A. Miller, Douglas E. Nelson, Joseph E.
Polastri and Ronald C. Pohls.  Also present was Thomas B.
Simone.  Charles A. Norris joined the meeting by telephone
from 10:30 a.m. to 12:15 p.m. for discussion of Agenda Item
IIIA.

Present from the staff were Christopher R. Maher and Caroline
Weir.

I.    **Approval of Minutes**

The minutes of the meeting of June 25, 1990 and the
amended minutes of the meetings of March 16, 1990 and
May 30, 1990, were approved.

1A.    **Role of the Committee**

The Chairman briefly reviewed the role of the Committee
for the benefit of the new members.  The Committee's
fiduciary and management roles were discussed.

II.    **Old Business**

A.    **Health Plan – Review of FY'91 Experience**

Staff summarized the report presented to the
Committee, based on calendar year 1990 data.  Fee-
for-Service costs were estimated to be
approximately $3 million under budget.  Over forty
percent of the difference was attributable to
trend below projections.  Twenty percent was due
to reduced claims in the final months of the base
period used for FY'91 projections and the balance
was attributable to margin not used.  It was noted
that although medical trend decreased as a result
of reduced utilization, prices for ambulatory
services had increased approximately 17%.

There was some discussion of the change in the prescription drug costs. It was noted that the rate of increase had dropped from 31% in calendar year 1989 to 21% in calendar year 1990. The Committee remarked that this rate was substantially higher than price increase alone. Staff was directed to review the effect of reducing the maximum quantity dispensed for initial prescriptions.

The Committee reviewed the current enrollment in the Fee-for-Service plans and HMOs in preparation for discussion of the next agenda item. It was noted that, excluding MMI, approximately 60% of employees are now enrolled in HMOs.

The meeting broke at 10:00 a.m. and resumed at 10:40 a.m.. Mr. Norris then joined the meeting by telephone.

III.    **New Business**                                    **PLAN-0120**

A.    Health Care Costs - Alternative Plan Designs for Calendar 1992

Staff reviewed the proposals distributed to Committee members prior to the meeting. It was noted that these broad proposals were presented to solicit Committee reaction and provide a basis for direction so that more detailed plan design changes could be presented at a later date.

The Chairman reminded the Committee that a Point-of-Service (POS) option was not up for consideration at this time as this option had been rejected by management. Similarly, the option of providing only HMOs had been rejected.

A number of Committee members commented that adoption of the POS model at some future date was probably inevitable in light of the cost-shifting which would arise from other employers implementing such plans. Continuation of the current Fee-for-Service (FFS) plan would then be analogous to paying retail for medical services while other plans paid wholesale.

The Chairman reiterated the need for caution in adopting a new product, like POS, and reviewed the high costs associated with implementation. He also pointed out the need to determine whether immediate adoption of this option was necessary given the recent favorable experience in the

- 2 -

There was some discussion of the change in the
prescription drug costs. It was noted that the
rate of increase had dropped from 31% in calendar
year 1989 to 21% in calendar year 1990. The
Committee remarked that this rate was
substantially higher than price increase alone.
Staff was directed to review the effect of
reducing the maximum quantity dispensed for
initial prescriptions.

The Committee reviewed the current enrollment in
the Fee-for-Service plans and HMOs in preparation
for discussion of the next agenda item. It was
noted that, excluding MMI, approximately 60% of
employees are now enrolled in HMOs.

The meeting broke at 10:00 a.m. and resumed at
10:40 a.m.. Mr. Norris then joined the meeting by
telephone.

**PLAN-0121**

III.    **New Business**

A.     Health Care Costs - Alternative Plan Designs for
       Calendar 1992

       Staff reviewed the proposals distributed to
       Committee members prior to the meeting. It was
       noted that these broad proposals were presented to
       solicit Committee reaction and provide a basis for
       direction so that more detailed plan design
       changes could be presented at a later date.

       The Chairman reminded the Committee that a Point-
       of-Service (POS) option was not up for
       consideration at this time as this option had been
       rejected by management. Similarly, the option of
       providing only HMOs had been rejected.

       A number of Committee members commented that
       adoption of the POS model at some future date was
       probably inevitable in light of the cost-shifting
       which would arise from other employers
       implementing such plans. Continuation of the
       current Fee-for-Service (FFS) plan would then be
       analogous to paying retail for medical services
       while other plans paid wholesale.

       The Chairman reiterated the need for caution in
       adopting a new product, like POS, and reviewed the
       high costs associated with implementation. He
       also pointed out the need to determine whether
       immediate adoption of this option was necessary
       given the recent favorable experience in the

August 29, 1991

Minutes of the Meeting
of the McKesson Corp.
Employee Benefits Committee

*Pages 4 thru 7*
*and*
*attachment III B*

March 22, 1991

A meeting of the Employee Benefits Committee was held at the Company's offices on March 22, 1991. The meeting convened at 9:00 a.m. Present from the Committee were Garret A. Scholz, Chairman, Ronald C. Anderson, Robert C. Johnson, Ivan D. Meyerson, Nancy A. Miller, Douglas E. Nelson, Joseph E. Polastri and Ronald C. Pohls. Also present was Thomas B. Simone. Charles A. Norris joined the meeting by telephone from 10:30 a.m. to 12:15 p.m. for discussion of Agenda Item IIIA.

Present from the staff were Christopher R. Maher and Caroline Weir.

I.    ## Approval of Minutes

The minutes of the meeting of June 25, 1990 and the amended minutes of the meetings of March 16, 1990 and May 30, 1990, were approved.

1A.    ## Role of the Committee

The Chairman briefly reviewed the role of the Committee for the benefit of the new members. The Committee's fiduciary and management roles were discussed.

II.    ## Old Business

A.    ### Health Plan - Review of FY'91 Experience

Staff summarized the report presented to the Committee, based on calendar year 1990 data. Fee-for-Service costs were estimated to be approximately $3 million under budget. Over forty percent of the difference was attributable to trend below projections. Twenty percent was due to reduced claims in the final months of the base period used for FY'91 projections and the balance was attributable to margin not used. It was noted that although medical trend decreased as a result of reduced utilization, prices for ambulatory services had increased approximately 17%.

PLAN-0122

PLAN-0123

Company's overall medical costs for active employees.

The Committee next discussed the two cost-sharing proposals summarized in Exhibits A and B of Agenda Item IIIA.

Staff noted that a secondary intent of prior cost-shifts to employees had been to encourage transfers to HMOs. The result was that, with the exception of MMI, almost 60% of enrolled employees were covered by HMOs as of 1/91. However, staff represented that prior cost-shifting in the FFS plan had had a disproportionate impact on lower-paid employees.

The Committee reviewed the decline in benefit ratios for the Fee-for-Service health program, and the increase in employees' out-of-pocket expenses. For medical coverage, the benefit ratio had dropped from 76% in 1988 to 67% in 1990. For an employee earning $20,000, out-of-pocket expenses for catastrophic situations increased from 3.5% of pay in 1987 to almost 12% in 1991.

As an alternative, staff offered the cost-shifting options with pay-related out-of-pocket employee expenses. The Committee discussed the options summarized in Exhibits B-1 and B-2 of Agenda Item IIIA. The number of employees affected and the numbers of employees at different salary levels was reviewed. The Committee then reverted to discussion of the POS option.

The Committee concluded that absent any substantial change in the external environment, POS Managed Care represented the optimum solution currently available. Several Committee members emphasized the need to utilize the provider discounts associated with POS plans. It was generally agreed that plan design changes implemented in January 1992 should therefore be regarded only as an interim measure. The Committee directed staff to report back on the first six months of calendar 1991 claims experience as soon as possible so that members could validate this view.

Meanwhile, staff were directed to review additional cost containment measures which could be implemented in January 1992 along with the changes described in Exhibit A of Agenda Item IIIA. Two specific measures were mentioned. These were: 1) a reduction in the initial supply

August 29, 1991

of prescription drugs dispensed; and 2) application of an incentive to maximize use of the Hancock Hospital discount program.

The Committee summarized its discussions with a recommendation to management that:

a) the deductible changes and employee contribution changes outlined in Exhibit A be implemented 1/1/92; and

b) that absent any significant changes in the health care system - or any significant changes in McKesson's cost/expense in the first half of calendar 1991 - preparation be made now to implement a POS Managed Care Program effective 1/1/93.

B.  **Long-Term Disability Plan-Funding Review**

Staff reviewed the funding options set out in the proposal submitted to members with the agenda.

The Committee approved implementation of an 18% increase in all employee contribution rates effective July 1, 1991.  The Chairman directed staff to ensure that the required FY'92 Company contribution of approximately $13,000 be treated as a loan.  This will allow benefits to claimants to remain tax free.  A copy of the signed loan authorization, which was subsequently increased to $100,000, is attached to these minutes.

PLAN-0124

C.  **McKesson Corporation Employees' Long-Term Disability Plan - Amendments in connection with Social Security Disability Awards**

Two proposals were presented to the Committee. The first imposes a maximum period during which a claimant might seek reinstatement of Plan benefits as a result of retroactive award of Social Security Disability benefits.  The maximum period recommended was twenty-four months from the date Plan benefits were terminated.  The Committee approved this proposal but directed staff to ensure that provisions were made in the Plan for a waiver of the twenty-four month limitation when it was not reasonably possible for the claimant to meet this deadline.

The second proposal waives the Plan provision which makes receipt of benefits for longer than

of prescription drugs dispensed; and 2)
application of an incentive to maximize use of the
Hancock Hospital discount program.

The Committee summarized its discussions with a
recommendation to management that:

a) the deductible changes and employee
contribution changes outlined in Exhibit A be
implemented 1/1/92; and

b) that absent any significant changes in the
health care system - or any significant changes
in McKesson's cost/expense in the first half of
calendar 1991 - preparation be made now to
implement a POS Managed Care Program effective
1/1/93.                              **PLAN-0125**

B.    Long-Term Disability Plan-Funding Review

Staff reviewed the funding options set out in the
proposal submitted to members with the agenda.

The Committee approved implementation of an 18%
increase in all employee contribution rates
effective July 1, 1991. The Chairman directed
staff to ensure that the required FY'92 Company
contribution of approximately $13,000 be treated
as a loan. This will allow benefits to claimants
to remain tax free. A copy of the signed loan
authorization, which was subsequently increased to
$100,000, is attached to these minutes.

C.    McKesson Corporation Employees' Long-Term
Disability Plan - Amendments in connection with
Social Security Disability Awards

Two proposals were presented to the Committee.
The first imposes a maximum period during which a
claimant might seek reinstatement of Plan benefits
as a result of retroactive award of Social
Security Disability benefits. The maximum period
recommended was twenty-four months from the date
Plan benefits were terminated. The Committee
approved this proposal but directed staff to
ensure that provisions were made in the Plan for a
waiver of the twenty-four month limitation when it
was not reasonably possible for the claimant to
meet this deadline.

The second proposal waives the Plan provision
which makes receipt of benefits for longer than

Company's overall medical costs for active employees.

The Committee next discussed the two cost-sharing proposals summarized in Exhibits A and B of Agenda Item IIIA.

Staff noted that a secondary intent of prior cost-shifts to employees had been to encourage transfers to HMOs. The result was that; with the exception of MMI, almost 60% of enrolled employees were covered by HMOs as of 1/91. However, staff represented that prior cost-shifting in the FFS plan had had a disproportionate impact on lower-paid employees.

The Committee reviewed the decline in benefit ratios for the Fee-for-Service health program, and the increase in employees' out-of-pocket expenses. For medical coverage, the benefit ratio had dropped from 76% in 1988 to 67% in 1990. For an employee earning $20,000, out-of-pocket expenses for catastrophic situations increased from 3.5% of pay in 1987 to almost 12% in 1991.

As an alternative, staff offered the cost-shifting options with pay-related out-of-pocket employee expenses. The Committee discussed the options summarized in Exhibits B-1 and B-2 of Agenda Item IIIA. The number of employees affected and the numbers of employees at different salary levels was reviewed. The Committee then reverted to discussion of the POS option.

**PLAN-0126**

The Committee concluded that absent any substantial change in the external environment, POS Managed Care represented the optimum solution currently available. Several Committee members emphasized the need to utilize the provider discounts associated with POS plans. It was generally agreed that plan design changes implemented in January 1992 should therefore be regarded only as an interim measure. The Committee directed staff to report back on the first six months of calendar 1991 claims experience as soon as possible so that members could validate this view.

Meanwhile, staff were directed to review additional cost containment measures which could be implemented in January 1992 along with changes described in Exhibit A of Agenda Item IIIA. Two specific measures were mentioned. These were: 1) a reduction in the initial supply

FBC\MIN1228:

eighteen months conditional upon the claimant's receipt of Social Security Disability benefits. This waiver would apply only to claimants who would be eligible for Social Security Disability benefits but for their age.  The Committee approved this proposal.

The two proposals were adopted with the following resolution and amendment:

RESOLVED, that, effective January 1, 1991, Section 4.4 of the McKesson Corporation Employees Long Term Disability Benefit Plan be, and hereby is, amended to read in full as follows:

## "4.4  Commencement & Duration of Benefits

Disability benefits shall be payable as of the first day that a Participant becomes eligible to receive benefits, and shall be payable at least monthly so long as such eligibility continues.

Eligibility for Disability benefits shall terminate upon the earliest occurrence of any of the following events:

A)   the date the Participant dies;

**PLAN-0127**

B)   the day on which the Disability no longer exists, as determined by the Plan Administrator;

C)   for Participants under age 65, on the first day following twenty-four (24) months of Benefit eligibility if the Participant is not receiving Social Security Disability Benefits;

D)   for Participants age 65 and older, on the first day following twenty-four (24) months of Benefit eligibility unless the Plan Administrator determines that the Participant, but for his or her age, would be eligible to receive Social Security Disability Benefits;

E)   a failure by the Participant to cooperate in a medical examination required by the Plan Administrator, within thirty (30) days following a written request for such an examination by the Plan Administrator;

F)   a refusal by the Participant to provide
     information requested in writing by the Plan
     Administrator for the Purpose of determining
     whether the Participant is entitled to
     benefits under the Plan (failure to provide
     such information within (30) days following
     such request shall be considered to
     constitute a refusal);

G)   the date as determined with reference to the
     following schedule:

| Age at Disability | Duration of Benefits |
|---|---|
| 61 and younger | Through the month during which age 65 is attained |
| 62 | 3 years, 6 months |
| 63 | 3 years |
| 64 | 2 years, 6 months |
| 65 | 2 years |
| 66 | 1 year, 9 months |
| 67 | 1 year, 6 months |
| 68 | 1 year, 3 months |
| 69 and older | 1 year |

H)   the Participant is no longer under the
     regular and continuous care and treatment of
     a Physician, unless such regular and
     continuous care and treatment are not
     medically indicated given the nature of the
     Disability, or the Participant refuses to
     follow or rejects the treatment plan
     recommended by the attending Physician,
     unless such treatment plan is disputed in
     good faith and on the written advice of
     another Physician.

A claimant whose benefits have terminated pursuant
to subparagraph C above shall be eligible to have
his or her benefits reinstated if, within twenty-
four (24) months of the date such benefits are
terminated, the claimant is awarded Social
Security Disability Benefits, and if, during such
twenty-four (24) month period (or relevant portion
thereof), the claimant has diligently pursued a
claim or an appeal for Social Security Disability
Benefits.   Provided, however, that the Plan
Administrator in its sole discretion, may waive
this twenty-four month time limit for good reason.

F) a refusal by the Participant to provide information requested in writing by the Plan Administrator for the Purpose of determining whether the Participant is entitled to benefits under the Plan (failure to provide such information within (30) days following such request shall be considered to constitute a refusal);

G) the date as determined with reference to the following schedule:

| Age at Disability | Duration of Benefits |
|---|---|
| 61 and younger | Through the month during which age 65 is attained |
| 62 | 3 years, 6 months |
| 63 | 3 years |
| 64 | 2 years, 6 months |
| 65 | 2 years |
| 66 | 1 year, 9 months |
| 67 | 1 year, 6 months |
| 68 | 1 year, 3 months |
| 69 and older | 1 year |

H) the Participant is no longer under the regular and continuous care and treatment of a Physician, unless such regular and continuous care and treatment are not medically indicated given the nature of the Disability, or the Participant refuses to follow or rejects the treatment plan recommended by the attending Physician, unless such treatment plan is disputed in good faith and on the written advice of another Physician.

A claimant whose benefits have terminated pursuant to subparagraph C above shall be eligible to have his or her benefits reinstated if, within twenty-four (24) months of the date such benefits are terminated, the claimant is awarded Social Security Disability Benefits, and if, during such twenty-four (24) month period (or relevant portion thereof), the claimant has diligently pursued a claim or an appeal for Social Security Disability Benefits. Provided, however, that the Plan Administrator in its sole discretion, may waive this twenty-four month time limit for good reason.

**PLAN-0129**

eighteen months conditional upon the claimant's receipt of Social Security Disability benefits. This waiver would apply only to claimants who would be eligible for Social Security Disability benefits but for their age. The Committee approved this proposal.

The two proposals were adopted with the following resolution and amendment:

RESOLVED, that, effective January 1, 1991, Section 4.4 of the McKesson Corporation Employees Long Term Disability Benefit Plan be, and hereby is, amended to read in full as follows:

## "4.4   Commencement & Duration of Benefits

Disability benefits shall be payable as of the first day that a Participant becomes eligible to receive benefits, and shall be payable at least monthly so long as such eligibility continues.

Eligibility for Disability benefits shall terminate upon the earliest occurrence of any of the following events:

A)   the date the Participant dies;

B)   the day on which the Disability no longer exists, as determined by the Plan Administrator;                          **PLAN-0130**

C)   for Participants under age 65, on the first day following twenty-four (24) months of Benefit eligibility if the Participant is not receiving Social Security Disability Benefits;

D)   for Participants age 65 and older, on the first day following twenty-four (24) months of Benefit eligibility unless the Plan Administrator determines that the Participant, but for his or her age, would be eligible to receive Social Security Disability Benefits;

E)   a failure by the Participant to cooperate in a medical examination required by the Plan Administrator, within thirty (30) days following a written request for such an examination by the Plan Administrator;

> No benefit shall be due or payable under this restated Plan for any Disability incurred prior to January 1, 1985."

D.    Proposal for Dependent Care Reimbursement Account

Staff sought approval for the proposal submitted to the Committee with the agenda. The Dependent Care Reimbursement Account would enable employees to use tax-free salary reductions to pay certain child care expenses. Company savings on FICA taxes are estimated to cover administrative fees if enrollment is at least 200 employees and the average contribution is $2,000.

The Committee authorized staff to distribute a focussed survey to employees with children. The estimated cost of the survey is $3,000. The Committee further authorized implementation of the plan on January 1, 1992, if the survey results indicated that there would be no cost to the Company from implementation.

Staff will report the survey results at the Committee's next meeting.

                                                        **PLAN-0131**

E.    McKesson Corporation Health Plan - Waiver of Hospital Review Penalty in Emergency Admissions

The Plan currently reduces eligible charges by 20% when a participant fails to notify the hospital review unit within forty-eight hours of an emergency hospital admission. Staff represented that there were a number of emergency situations in which it is not reasonably possible for the participant to comply with the forty-eight hour notification requirement. The Committee approved the following resolution which provides for waiver of the benefit reduction in cases of emergency admissions.

RESOLVED, that effective January 1, 1991, the McKesson Corporation Health Plan be amended to provide that the penalty under the Hospital Review Program be waived for an emergency hospital admission.

RESOLVED, FURTHER, that the Vice President of Personnel is authorized to execute an amendment to

the McKesson Corporation Health Plan to carry out the purpose of the preceding resolution.

F.   Update on Accounting and Liability for Non-Pension Retiree Benefits

Staff reported preliminary results from Deloitte & Touche's report of liabilities and expense connected with the application of FAS statement 106.   The 1991 accumulated benefit obligation was estimated at $187 million and the expense at $29.6 million.   However, a number of items require further review before these figures are finalized. Chief among these items are the application of updated turnover assumptions and a resolution of the accounting treatment of retirees enrolled in HMOs.

Staff will report to the Committee as the numbers are finalized and alternatives for reduction of the liability will be explored.

G.   Proposal to Grant Post-Retirement Health Coverage to Certain Employees Terminated as a Result of Company Reorganization

The Service Merchandising group requested special consideration under the retiree health care program for eleven employees whose employment terminates in 1991 as a result of a Company reorganization.   Under this proposal, the affected employees would be deemed to have terminated employment on December 31, 1990, for purposes of eligibility, coverage and contribu- tions under the retiree health care program.   This request was made because the Company was unable to inform the affected employees of their impending termination prior to the end of 1990; hence they did not have the opportunity to retire voluntarily before the end of the year.

In response to Committee questions, staff pointed out that the situation of these employees was materially different from that of other employees who had requested that the terms of the 1990 Retiree Health Care Program be applied to them even though they retired after 1990.   These other employees would not have qualified for retiree health coverage if employment had terminated in 1990; and their termination would not occur in the first part of 1991 as a result of a reorganization planned by the Company prior to the end of 1990.

the McKesson Corporation Health Plan to carry out
the purpose of the preceding resolution.

F.    Update on Accounting and Liability for Non-Pension
      Retiree Benefits

      Staff reported preliminary results from Deloitte &
      Touche's report of liabilities and expense
      connected with the application of FAS statement
      106. The 1991 accumulated benefit obligation was
      estimated at $187 million and the expense at $29.6
      million. However, a number of items require
      further review before these figures are finalized.
      Chief among these items are the application of
      updated turnover assumptions and a resolution of
      the accounting treatment of retirees enrolled in
      HMOs.

      Staff will report to the Committee as the numbers
      are finalized and alternatives for reduction of
      the liability will be explored.

G.    Proposal to Grant Post-Retirement Health Coverage
      to Certain Employees Terminated as a Result of
      Company Reorganization

      The Service Merchandising group requested special
      consideration under the retiree health care
      program for eleven employees whose employment
      terminates in 1991 as a result of a Company
      reorganization. Under this proposal, the affected
      employees would be deemed to have terminated
      employment on December 31, 1990, for purposes of
      eligibility, coverage and contribu- tions under
      the retiree health care program. This request was
      made because the Company was unable to inform the
      affected employees of their impending termination
      prior to the end of 1990; hence they did not have
      the opportunity to retire voluntarily before the
      end of the year.

      In response to Committee questions, staff pointed
      out that the situation of these employees was
      materially different from that of other employees
      who had requested that the terms of the 1990
      Retiree Health Care Program be applied to them
      even though they retired after 1990. These other
      employees would not have qualified for retiree
      health coverage if employment had terminated in
      1990; and their termination would not occur in the
      first part of 1991 as a result of a reorganization
      planned by the Company prior to the end of 1990.

No benefit shall be due or payable under this
restated Plan for any Disability incurred prior to
January 1, 1985."

D.     Proposal for Dependent Care Reimbursement Account

Staff sought approval for the proposal submitted
to the Committee with the agenda.  The Dependent
Care Reimbursement Account would enable employees
to use tax-free salary reductions to pay certain
child care expenses.  Company savings on FICA
taxes are estimated to cover administrative fees
if enrollment is at least 200 employees and the
average contribution is $2,000.

The Committee authorized staff to distribute a
focussed survey to employees with children.  The
estimated cost of the survey is $3,000.  The
Committee further authorized implementation of the
plan on January 1, 1992, if the survey results
indicated that there would be no cost to the
Company from implementation.

Staff will report the survey results at the
Committee's next meeting.

PLAN-0134

E.     McKesson Corporation Health Plan - Waiver of
Hospital Review Penalty in Emergency Admissions

The Plan currently reduces eligible charges by 20%
when a participant fails to notify the hospital
review unit within forty-eight hours of an
emergency hospital admission.  Staff represented
that there were a number of emergency situations
in which it is not reasonably possible for the
participant to comply with the forty-eight hour
notification requirement.  The Committee approved
the following resolution which provides for waiver
of the benefit reduction in cases of emergency
admissions.

RESOLVED, that effective January 1, 1991, the
McKesson Corporation Health Plan be amended to
provide that the penalty under the Hospital Review
Program be waived for an emergency hospital
admission.

RESOLVED, FURTHER, that the Vice President of
Personnel is authorized to execute an amendment to

The Committee approved this proposal with the resolution below.  It was noted that one of the eleven employees, Josie Lefevre, had already found other employment with McKesson and would therefore not be affected by this measure.

Subsequent to the meeting, it was discovered that one of the employees, Janice Hawley, had not had sufficient service at December 1990 to qualify for retiree health coverage.  This resolution will therefore not apply to Ms. Hawley.

RESOLVED, that, for the purposes of coverage under the 1990 post-retirement health care program only, the nine (9) Service Merchandising employees named in Attachment A whose employment has terminated or will terminate during February or April, 1991 shall be deemed to have terminated employment on December 31, 1990; and

RESOLVED, FURTHER, that each employee named in Attachment A shall be covered by the terms of the 1990 post-retirement health care program upon his or her termination of employment with Service Merchandising, provided that he or she is not subsequently employed by McKesson Corporation, its parent, subsidiaries or affiliates.

H.    1990 Retirement Plan Experience

Staff reported that retirements in 1990 were more than twice the number in 1989.  This increase was largely attributed to the change in post-retirement health coverage, which applies to employees retiring after 1990.

Committee members noted that there had been no adverse impact on operations as the increase in retirements had been anticipated.

I.    Health Care and Disability Appeals - Status Reports

In 1990, the Committee delegated decisions on health and disability appeals to the Director of Compensation and Benefits.  Staff reported that since then, decisions had been made on thirty-four appeals.  Twenty-two were denied, eleven approved and one was withdrawn by the claimant.

As of the meeting date, ten appeals were pending.

When this duty was delegated, it was agreed that individual decisions would be reviewed with the Committee member representing the claimant's business unit before the claimant was notified of the decision. Staff noted that this had been accomplished by informing the appropriate Personnel Vice President in each unit who then reviewed the case with the Committee member. Members confirmed that this process has been in operation and appears to be working in a satisfactory manner.

The Committee directed that future status reports be presented on a quarterly basis.

A report covering the second quarter of calendar 1991 was circulated to Committee members at the end of June.

J.    Authorized signature for Benefit Plans

Subsequent to the March meeting, a resolution was circulated for approval of authorized signatures for the Retirement, Profit-Sharing, Long-Term Disability and Health Plans. A copy of the signed resolution is attached to these minutes.

The meeting adjourned at 1:55 p.m.

Christopher R. Maher

**PLAN-0136**

EBC\MIN32291

When this duty was delegated, it was agreed that individual decisions would be reviewed with the Committee member representing the claimant's business unit before the claimant was notified of the decision. Staff noted that this had been accomplished by informing the appropriate Personnel Vice President in each unit who then reviewed the case with the Committee member. Members confirmed that this process has been in operation and appears to be working in a satisfactory manner.

The Committee directed that future status reports be presented on a quarterly basis.

A report covering the second quarter of calendar 1991 was circulated to Committee members at the end of June.

J.    Authorized signature for Benefit Plans

Subsequent to the March meeting, a resolution was circulated for approval of authorized signatures for the Retirement, Profit-Sharing, Long-Term Disability and Health Plans. A copy of the signed resolution is attached to these minutes.

The meeting adjourned at 1:55 p.m.

Christopher R. Maher

**PLAN-0137**

The Committee approved this proposal with the resolution below. It was noted that one of the eleven employees, Josie Lefevre, had already found other employment with McKesson and would therefore not be affected by this measure.

Subsequent to the meeting, it was discovered that one of the employees, Janice Hawley, had not had sufficient service at December 1990 to qualify for retiree health coverage. This resolution will therefore not apply to Ms. Hawley.

RESOLVED, that, for the purposes of coverage under the 1990 post-retirement health care program only, the nine (9) Service Merchandising employees named in Attachment A whose employment has terminated or will terminate during February or April, 1991 shall be deemed to have terminated employment on December 31, 1990; and

RESOLVED, FURTHER, that each employee named in Attachment A shall be covered by the terms of the 1990 post-retirement health care program upon his or her termination of employment with Service Merchandising, provided that he or she is not subsequently employed by McKesson Corporation, its parent, subsidiaries or affiliates.

H.    1990 Retirement Plan Experience

Staff reported that retirements in 1990 were more than twice the number in 1989. This increase was largely attributed to the change in post-retirement health coverage, which applies to employees retiring after 1990.

Committee members noted that there had been no adverse impact on operations as the increase in retirements had been anticipated.

I.    Health Care and Disability Appeals – Status Reports

In 1990, the Committee delegated decisions on health and disability appeals to the Director of Compensation and Benefits. Staff reported that since then, decisions had been made on thirty-four appeals. Twenty-two were denied, eleven approved and one was withdrawn by the claimant.

As of the meeting date, ten appeals were pending.

PLAN-0138

Minutes of the Meeting of the McKesson Corp. Employee Benefits Committee
of March 22, 1991, Item IIIA, Attachment

# EXHIBIT A: Across the Board Cost Shifting

| Costs in thousands | Current Plan | | A Deductible/Contribution Increases | |
|---|---|---|---|---|
| Deductible | Plan A:<br>$275 per person<br>$675 per family | | Plan A:<br>$300 per person<br>$750 per family | |
| Employee Copay<br>  Primary Care<br>  Other Care | Plan A:     80% / 20%<br>Plan A:     80% / 20% | | Plan A:     80% / 20%<br>Plan A:     80% / 20% | |
| Maximum<br>Copay | Plan A:<br>$2,000 per person<br>$4,000 per family | | Plan A:<br>$2,000 per person<br>$4,000 per family | |
| 1992 Monthly<br>Employee<br>Contribution | Plan A:   $14/35/35/70<br>Plan C:   $6/12/12/24<br>HMO:     $9/20/20/40 | | Plan A:   $17/43/43/85<br>Plan C:   $7/14/14/29<br>HMO:     $10/23/23/46 | |
| Illustrative Costs        (see notes) | Calendar 1992 | Three Years | Calendar 1992 | Three Years |
| Total Cost<br>Active Medical Only<br>(Excludes Rx) | $37,552 | $133,387 | $37,512 | $133,250 |
| Employee Contributions<br>Active Medical Only<br>(Excludes Rx) | $3,484 | $10,452 | $4,158 | $14,664 |
| Company Cost<br>Active Medical Only<br>(Excludes Rx) | $34,068 | $122,935 | $33,354 | $118,586 |
| | Change in Cost | | Calendar 1992 | Three Years |
| | Reduction in Total Cost | | $40 | $137 |
| | Increase in Employee Cost | | $674 | $4,212 |
| | Reduction in Company Cost | | $714 | $4,349 |

Notes:
1.  Illustrative costs should be used only to measure relative savings from various options.
2.  Costs are projected costs for calendar 1992 and subsequent calendar years.
3.  Projections based on TPF&C's analysis of claims incurred and paid first 9 months 1990 and on 1991 HMO premium rates. They do not take into account 1/91 enrollment changes.
4.  Employee contributions assumed to increase at trend rates in in 1993 and 1994.
5.  Trend assumptions: Year One: FFS 22%; IPAs 16%; Staff HMOs 14%; one point less in each succeeding year.

PLAN-0139

Minutes of the McKesson Corporation
Employee Benefits Committee Meeting
of March 22, 1991, Item IIIB Attachment

To

Members of the Employee
Benefits Committee

Date

May 14, 1991

**McKesson**

Intra Company
Correspondence

From

Chris Maher

Location/Tel

Compensation & Benefits
One Post St., 14th Floor
(415) 983-8570

Copies To

Subject

Resolution for Long-Term
Disability Plan Loan

`LIVED

MAY 16 1991`

At the March 22, 1991 Employee Benefits Committee meeting, Staff
presented a funding review of the McKesson Corporation Employees
Long-Term Disability Plan. In that review Staff projected a
FY'92 shortfall of $13,000 if the employee contributions were
raised 18% beginning July 1991. The committee approved both the
rate increase and a company loan to cover the shortfall.

The attached resolution which requires your signature authorizes
a company loan of $100,000 to the Plan. The loan amount is
higher than expected because previous calculations credited the
additional premiums from the rate increase beginning in July,
the month the rate increase is effective. Due to the premium
collection and deposit lag, the July premiums will not be
deposited into the Trust until September. This increases the
required loan amount to $78,000 (see Attachment 1). Your
approval is sought for a loan of $100,000 to the Plan to cover
the shortfall.

Please review, sign, and forward to the next committee member as
soon as possible. The loan must be funded by May 23, 1991.
Thanks.

CRM:ipg

Attachment

a:\memo\ltdloan

PLAN-0140

Minutes of the McKesson Corporation
Employee Benefits Committee Meeting
of March 22, 1991, Item IIIB Attachment

To
Members of the Employee
Benefits Committee

From
Chris Maher

Subject
Resolution for Long-Term
Disability Plan Loan

Date
May 14, 1991

**M᛫Kesson**

*Intra Company*
*Correspondenc*

Location/Tel
Compensation & Benefits
One Post St., 14th Floor
(415) 983-8570
Copies To

᛫IVED

MAY 1 6 1991

At the March 22, 1991 Employee Benefits Committee meeting, Staff
presented a funding review of the McKesson Corporation Employees
Long-Term Disability Plan.  In that review Staff projected a
FY'92 shortfall of $13,000 if the employee contributions were
raised 18% beginning July 1991.  The committee approved both the
rate increase and a company loan to cover the shortfall.

The attached resolution which requires your signature authorizes
a company loan of $100,000 to the Plan.  The loan amount is
higher than expected because previous calculations credited the
additional premiums from the rate increase beginning in July,
the month the rate increase is effective.  Due to the premium
collection and deposit lag, the July premiums will not be
deposited into the Trust until September.  This increases the
required loan amount to $78,000 (see Attachment 1).  Your
approval is sought for a loan of $100,000 to the Plan to cover
the shortfall.

Please review, sign, and forward to the next committee member as
soon as possible.  The loan must be funded by May 23, 1991.
Thanks.

CRM:ipg

Attachment

a:\memo\ltdloan

PLAN-0141

Minutes of the Meeting of the McKesson Corp. Employee Benefits Committee
of March 22, 1991, Item IIIA, Attachment

# EXHIBIT A:  Across the  Board  Cost Shifting

| Costs in thousands | Current Plan | A — Deductible/Contribution Increases |
|---|---|---|
| Deductible | Plan A:<br>$275 per person<br>$675 per family | Plan A:<br>$300 per person<br>$750 per family |
| Employee Copay<br>  Primary Care<br>  Other Care | Plan A:     80% / 20%<br>Plan A:     80% / 20% | Plan A:     80% / 20%<br>Plan A:     80% / 20% |
| Maximum<br>Copay | Plan A:<br>$2,000 per person<br>$4,000 per family | Plan A:<br>$2,000 per person<br>$4,000 per family |
| 1992 Monthly<br>Employee<br>Contribution | Plan A:   $14/35/35/70<br>Plan C:   $6/12/12/24<br>HMO:   $9/20/20/40 | Plan A:   $17/43/43/85<br>Plan C:   $7/14/14/29<br>HMO:   $10/23/23/46 |

| Illustrative Costs  (see notes) | Calendar 1992 | Three Years | Calendar 1992 | Three Years |
|---|---|---|---|---|
| Total Cost<br>Active Medical Only<br>(Excludes Rx) | $37,552 | $133,387 | $37,512 | $133,250 |
| Employee Contributions<br>Active Medical Only<br>(Excludes Rx) | $3,484 | $10,452 | $4,158 | $14,664 |
| Company Cost<br>Active Medical Only<br>(Excludes Rx) | $34,068 | $122,935 | $33,354 | $118,586 |

| Change in Cost | Calendar 1992 | Three Years |
|---|---|---|
| Reduction in Total Cost | $40 | $137 |
| Increase in Employee Cost | $674 | $4,212 |
| Reduction in Company Cost | $714 | $4,349 |

Notes:
1.  Illustrative costs should be used only to measure relative savings from various options.
2.  Costs are projected costs for calendar 1992 and subsequent calendar years.
3.  Projections based on TPF&C's analysis of claims incurred and paid first 9 months 1990 and on 1991 HMO premium rates.  They do not take into account 1/91 enrollment changes.
4.  Employee contributions assumed to increase at trend rates in in 1993 and 1994.
5.  Trend assumptions: Year One: FFS 22%; IPAs 16%; Staff HMOs 14%; one point less in each succeeding year.

PLAN-0142

## Attachment I: Projected LTD Plan Short Fall

### With Lag because July contribution will not hit trust until September
### Current McKesson Projection
### based on averages 7/90 – 3/91

|  | Income | Payments | Difference | Cumulative Difference |
|---|---|---|---|---|
| Beginning Balance | $152,000 |  | $152,000 | $152,000 |
| Jan 91 | $156,607 | $182,475 | ($25,868) | $126,132 |
| Feb 91 | $156,607 | $182,475 | ($25,868) | $100,264 |
| Mar 91 | $156,607 | $182,475 | ($25,868) | $74,396 |
| Apr 91 | $156,607 | $182,475 | ($25,868) | $48,528 |
| May 91 | $156,607 | $182,475 | ($25,868) | $22,660 |
| Jun 91 | $156,607 | $182,475 | ($25,868) | ($3,208) |
| Jul 91 | $156,607 | $182,475 | ($25,868) | ($29,076) |
| Aug 91 | $156,607 | $182,475 | ($25,868) | ($54,944) |
| Sep 91 | $156,607 | $182,475 | ($25,868) | ($80,812) |
| Oct 91 | $184,796 | $182,475 | $2,321 | ($78,491) |
| Nov 91 | $184,796 | $182,475 | $2,321 | ($76,169) |
| Dec 91 | $184,796 | $182,475 | $2,321 | ($73,848) |
| Earnings |  |  | $0 |  |
| Expense |  | $5,000 | ($5,000) | ($78,848) |
| Total | $2,115,852 | $2,194,700 | ($78,848) |  |

lld1991\proj\rec
05/13/91

Item IIIB Attachment

## ACTION BY UNANIMOUS WRITTEN CONSENT OF THE EMPLOYEE BENEFITS COMMITTEE OF THE BOARD OF DIRECTORS OF McKESSON CORPORATION

The undersigned, constituting all of the members of the Employee Benefits Committee of the Board of Directors of McKesson Corporation, a Delaware corporation, acting without the formality of convening a meeting pursuant to Section 141(f) of the Delaware General Corporation Law and Article III, Section 10 of the By-Laws of the Corporation, do hereby consent to and adopt the following resolutions:

RESOLVED, that First Interstate Bank of California, Trustee for the McKesson Corporation Employees' Long-Term Disability Benefit Plan Trust be, and it hereby is, directed to execute a demand Promissory Note for $100,000.00 in favor of McKesson Corporation, representing an unsecured interest-free loan from McKesson Corporation to the McKesson Corporation Employees' Long-Term Disability Plan, which is to be used to pay the Plan's ordinary operating expenses, such as Plan benefits; and

RESOLVED, FURTHER, that this loan is intended to comply with DOL Class Exemption 80-26.

PLAN-0144

This document may be executed in counterparts, each of which shall be deemed an original, but all of which taken together

## ACTION BY UNANIMOUS WRITTEN CONSENT OF THE
### EMPLOYEE BENEFITS COMMITTEE OF THE
### BOARD OF DIRECTORS
### OF
### McKESSON CORPORATION

The undersigned, constituting all of the members of the Employee Benefits Committee of the Board of Directors of McKesson Corporation, a Delaware corporation, acting without the formality of convening a meeting pursuant to Section 141(f) of the Delaware General Corporation Law and Article III, Section 10 of the By-Laws of the Corporation, do hereby consent to and adopt the following resolutions:

RESOLVED, that First Interstate Bank of California, Trustee for the McKesson Corporation Employees' Long-Term Disability Benefit Plan Trust be, and it hereby is, directed to execute a demand Promissory Note for $100,000.00 in favor of McKesson Corporation, representing an unsecured interest-free loan from McKesson Corporation to the McKesson Corporation Employees' Long-Term Disability Plan, which is to be used to pay the Plan's ordinary operating expenses, such as Plan benefits; and

RESOLVED, FURTHER, that this loan is intended to comply with DOL Class Exemption 80-26.

**PLAN-0145**

This document may be executed in counterparts, each of which shall be deemed an original, but all of which taken together

Item IIIB Attachment

Attachment I: Projected LTD Plan Short Fall

With Lag because July
contribution will not hit trust until September
Current McKesson Projection
based on averages 7/90 – 3/91

| | Income | Payments | Difference | Cumulative Difference |
|---|---|---|---|---|
| Beginning Balance | $152,000 | | $152,000 | $152,000 |
| Jan 91 | $156,607 | $182,475 | ($25,868) | $126,132 |
| Feb 91 | $156,607 | $182,475 | ($25,868) | $100,264 |
| Mar 91 | $156,607 | $182,475 | ($25,868) | $74,396 |
| Apr 91 | $156,607 | $182,475 | ($25,868) | $48,528 |
| May 91 | $156,607 | $182,475 | ($25,868) | $22,660 |
| Jun 91 | $156,607 | $182,475 | ($25,868) | ($3,208) |
| Jul 91 | $156,607 | $182,475 | ($25,868) | ($29,076) |
| Aug 91 | $156,807 | $182,475 | ($25,868) | ($54,944) |
| Sep 91 | $156,607 | $182,475 | ($25,868) | ($80,812) |
| Oct 91 | $184,796 | $182,475 | $2,321 | ($78,491) |
| Nov 91 | $184,796 | $182,475 | $2,321 | ($76,169) |
| Dec 91 | $184,796 | $182,475 | $2,321 | ($73,848) |
| Earnings | | | $0 | ($73,848) |
| Expense | | $5,000 | ($5,000) | ($78,848) |
| | | | | |
| Total | $2,115,852 | $2,194,700 | ($78,848) | |

lldt1991\proj\rec
05/13/91

PLAN-0146

shall constitute one and the same instrument, and the Secretary
is directed to file this consent with the minutes of the
proceedings of the Employee Benefits Committee of the Board of
Directors of this Corporation.

DATED:     May 13, 1991

_____
Ronald C. Anderson

_____
Robert C. Johnson

_____
Ronald C. Pohls

_____
Ivan D. Meyerson

_____
Nancy A. Miller

_____
Douglas E. Nelson

_____
Joseph E. Polastri

_____
Garret A. Scholz

MINUTES OF THE McKESSON CORPORATION
EMPLOYEE BENEFITS COMMITTEE
AUGUST 12, 1987
Page 3

RESOLVED, FURTHER, that all McKesson Delaware employees shall be eligible to continue participation in the McKesson Corporation Profit-Sharing Investment Plan (PSIP) as of August 1, 1987, in accordance with the terms and conditions of that Plan. Their prior service with McKesson Corporation will be counted towards vesting and Company contribution eligibility; and

RESOLVED, FURTHER, that all McKesson Delaware employees shall be eligible to continue participation in the McKesson Corporation Retirement Plan as of August 1, 1987, in accordance with the terms and conditions of that Plan. For these employees, all prior years of service with McKesson Corporation which previously counted towards eligibility, participation, vesting and creditable service will continue to be counted; and

RESOLVED, FURTHER, that all future employees of McKesson Delaware shall be eligible to participate in the above-named Plans, in accordance with the terms and conditions of those Plans.

C.    The Health Plan appeal of Arnold Bowman was circulated to committee members since the last meeting, and it was denied by the following resolution:

RESOLVED, that Mr. Bowman's appeal for reimbursement of charges for care provided by Jill Stanford is denied as Ms. Stanford is not a registered nurse, licensed vocational nurse or licensed practical nurse and further the services are considered custodial and not medically necessary.

D.    The Health Plan appeal of Richard J. Schnepf was circulated to committee members since the last meeting, and it was denied by the following resolution:

RESOLVED, that Richard J. Schnepf's request that charges from Pacific International, Ltd. be considered eligible expenses under the McKesson Corporation Health Plan is denied as the charges do not meet the Plan definition of covered medical charges.

PLAN-0148

McKesson Corporation Employees'
Long-Term Disability Plan
Amendment No. 1

---

Effective September 1, 1987, Article 1, Section 1.5 of the Plan Document is amended as follows:

## 1.5  Basic Salary

"Basic Salary" shall mean:

i)  with respect to salaried and hourly employees, compensation paid for services rendered to the Company (including any compensation deferred under a Company deferred compensation plan), but shall exclude bonuses, overtime and shift pay, premiums and all other forms of extra remuneration;

ii) with respect to commissioned sales representatives of the Water Division of the Company, the average income of the assigned route during the previous calendar year, or, if such route was not in existence for all of such calendar year, the average of all other routes, in the same district during such calendar year; and

iii) with respect to all other commissioned sales representatives, base pay, commissions and payments pursuant to Company-sponsored incentive programs

PLAN-0149

including prize winnings and the monetary equivalent (as determined by the Company) of merchandise and incentive points, but shall exclude any payments pursuant to supplier-sponsored incentive programs, reimbursed business expenses, car or territory allowances, moving expenses and all other forms of extra remuneration; for purposes of benefit determination, there shall be used the average of such Basic Salary received in the previous calendar year, except in the case of a Participant who was not an Employee during all of such calendar year, in which case a projection of such Basic Pay, as determined by the Company, shall be used.

For purposes of contribution and benefit determination a Participant may elect to cover i) only the first $2,500 per month of Basic Salary, ii) the first $5,000 per month of Basic Salary, or iii) the first $10,000 per month of Basic Salary.

Approved for McKesson Corporation

By: _____

Title: Vice President

Date: 9/1/87

-2-

**PLAN-0150**

including prize winnings and the monetary equivalent
(as determined by the Company) of merchandise and
incentive points, but shall exclude any payments
pursuant to supplier-sponsored incentive programs,
reimbursed business expenses, car or territory
allowances, moving expenses and all other forms of
extra remuneration; for purposes of benefit
determination, there shall be used the average of
such Basic Salary received in the previous calendar
year, except in the case of a Participant who was
not an Employee during all of such calendar year, in
which case a projection of such Basic Pay, as
determined by the Company, shall be used.

For purposes of contribution and benefit determination a
Participant may elect to cover i) only the first $2,500 per
month of Basic Salary, ii) the first $5,000 per month of
Basic Salary, or iii) the first $10,000 per month of Basic
Salary.

Approved for McKesson Corporation

By: _James Johnston_____

Title: _Vice President_____

Date: _9/1/87_____

-2-

McKesson Corporation Employees'
Long-Term Disability Plan
Amendment No. 1

Effective September 1, 1987, Article 1, Section 1.5 of the
Plan Document is amended as follows:

1.5   Basic Salary

"Basic Salary" shall mean:

i)   with respect to salaried and hourly employees,
     compensation paid for services rendered to the
     Company (including any compensation deferred under a
     Company deferred compensation plan), but shall
     exclude bonuses, overtime and shift pay, premiums
     and all other forms of extra remuneration;

ii)  with respect to commissioned sales representatives
     of the Water Division of the Company, the average
     income of the assigned route during the previous
     calendar year, or, if such route was not in
     existence for all of such calendar year, the average
     of all other routes, in the same district during
     such calendar year; and

iii) with respect to all other commissioned sales
     representatives, base pay, commissions and payments
     pursuant to Company-sponsored incentive programs

**PLAN-0152**

MINUTES OF THE McKESSON CORPORATION
EMPLOYEE BENEFITS COMMITTEE MEETING
April 13, 1988

Page 2

o    Stop Loss

Plan A:    $  800 per person / $1,600 per family
Plan C:    $1,500 per person / $3,000 per family
           (no change)

o    Employee Contributions for Medical Coverage per
     month

|  | Plan A | Plan C | HMO |
|---|---|---|---|
| Employee | $ 8 | $ 2 | $ .5 |
| Employee & Spouse | 20 | 7 | 10 |
| Employee & Children | 20 | 7 | 10 |
| Employee & Family | 40 | 14 | 20 |

The Committee agreed to the increase in differential
between single and family rates in 1989. This was
viewed as a method to further encourage employees to
eliminate duplicate coverage for family members
while maintaining the current cost to employees with
employee-only coverage. 1989 employee contributions
for actual dental coverage were approved at 1988
levels.

C.   Proposal to Redesign McKesson Corporation Employees'
     Long Term Disability Plan to Alleviate Funding
     Deficiency

Staff reported that the plan funding deficiency
which existed in 1984 had not been measurably
alleviated by interim changes. The deficiency was
attributed to claims experience prior to January
1985, which was greater than could be supported by
the contribution rate in effect then. At November
1987, the deficiency was calculated at $4.3
million. A cash flow deficit was projected for
1992.

Various funding and design alternatives were
reviewed. These included rate increases of 22%, and
reductions in the duration and level of benefits.

The Committee viewed the impact of rate increases on
current employees to redress past funding
deficiencies unfavorably. Staff were therefore
directed to study the impact on the Company, and the
Plan participants, of a Company subsidy to the Plan,
and to report at the next Committee meeting.