PAMELA E. COGAN (SBN 105089)
ROPERS, MAJESKI, KOHN & BENTLEY
1001 Marshall Street
Redwood City, CA  94063
Telephone:     (650) 364-8200
Facsimile:     (650) 780-1701
Email:  pcogan@ropers.com

Attorneys for Real Party In Interest
LIBERTY LIFE ASSURANCE COMPANY OF
BOSTON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

MICHAEL CREMIN,

                        Plaintiff,

        v.

McKESSON CORPORATION
EMPLOYEES' LONG TERM DISABILITY
BENEFIT PLAN

                        Defendants.

_____

LIBERTY LIFE ASSURANCE COMPANY
OF BOSTON

                        Real Party In Interest

CASE NO.  C 07-1302-JL

**DEFENDANT AND REAL PARTY IN
INTEREST'S SUPPLEMENTAL BRIEF**

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1      On June 19, 2008, the United States Supreme Court's decision in *Metropolitan Life Insurance*

2   *Company v. Glenn*, 2008 U.S. LEXIS 5030 (2008), was issued.  *Glenn* addressed two issues:

3   Whether a conflict of interest exists when an ERISA benefit claim is administered and paid by an

4   insurance company, and, if so, how that conflict should be taken into account.  Recognizing that the

5   conflict of interest is "less clear" when the plan is administered by an insurance company rather than

6   an employer itself, the Court nonetheless held that a conflict of interest would exist for ERISA

7   purposes.  (*Id.* at 16.)  The Court also held that "a conflict of interest should be weighed as a 'factor in

8   determining whether there is an abusive of discretion,'" citing to its previous decision in *Firestone v.*

9   *Bruch,* 489 U.S. 101 (1989).  The significance or severity of the conflict, however, "should prove less

10  important (perhaps to the vanishing point)" depending on circumstances of the case. (*Id.* at 21-22.)

11      The Supreme Court ruled, consistent with principles of trust law, that a deferential (abuse of

12  discretion) standard of review is appropriate where the plan provides "the administrator or fiduciary

13  discretionary authority to determine eligibility for benefits," citing again to *Firestone,* and recognizing

14  that an abuse of discretion standard will apply to "the lions share of ERISA plan claim denials."  *(Id* at

15  19).  The court <u>rejected</u> the concept that the court should change the standard of review to *de novo* in

16  weighing conflict of interest:

17          "We do not believe that *Firestone's* statement implies a change of the
            *standard* of review, say, from deferential to *de novo* review.  Trust law
18          continues to apply a deferential standard of review to the discretionary
            decision making of a conflicting trustee, while at the same time
19          requiring the reviewing judge to take account of the conflict when
            determining whether the trustee, substantively or procedurally, has
20          abused its discretion."

21      Additionally, the Supreme Court rejected any burden shifting tests or other special procedural

22  rules in the courts weighing of the conflict of interest:

23          "Neither do we believe it necessary or desirable for courts to create
            special burden of proof rules, where other special procedural or
24          evidentiary rules, focus narrowly upon the evaluator/payor conflict.  In
            principle, as we have said, conflicts are about one factor among many
25          that a reviewing judge must take into account.  Benefit decisions arise
            in too many contexts, concern too many circumstances, and can relate
26          in too many ways to conflicts – which themselves vary in kind and
            degree of seriousness – for us to come up with a one-size fits all
27          procedural system that is likely to promote fairness and accurate
            review."

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

Thus, the analysis previously applied in the Ninth Circuit as set forth in *McDaniel v. Chevron Corporation* 203 F.3d 1099 (9th Cir. 2000) has been squarely rejected.[1] When this court initially reviewed the denial of plaintiff's benefit claim, it ruled on cross-motions for summary adjudication that a de novo standard of review would apply based upon application of the *McDaniel v. Chevron* burden shifting test whereby the court ruled that there was evidence of a conflict and therefore applied a de novo review standard. Following the court's October 3, 2005 ruling on the standard of review, the court then considered the parties' Rule 52 motions, applying a *de novo* review standard, giving no deference to Liberty's decision. Based upon current law, an abuse of discretion standard should have been applied. Accordingly, it should be applied now to the court's review of Liberty's decision to again uphold its denial of benefits following the additional review at the court's direction when the claim was remanded.

Plaintiff raises three arguments to continue to insist on a *de novo* review here. First, plaintiff asserts that the plan documents do not expressly delegate discretion to Liberty. However, plaintiff previously conceded that the plan documents did provide discretionary authority to Liberty. As the court states in its order of October 3, 2005 on the standard of review: "The parties do not dispute that the McKesson Plan expressly grants defendant discretionary authority as plan administrator to construe the plan's terms and determine benefit eligibility." (Order,10:4-6). Moreover, as previously set forth in Liberty's opposition and cross-motion brief, the documents do provide the requisite discretionary authority to Liberty. (Defendant's brief, 13:13- 15:22.) Plaintiff next ignores *Glenn* and asked the court to "reject deferential review altogether and review *de novo*" based upon its reading of *Abatie*. As noted above, the Supreme Court expressly stated that the conflict of interest would <u>not</u> <u>change</u> the standard of review to *de novo*. (*Id* at 21-22.). Moreover, there are no "egregious errors" in procedure as articulated in *Abatie* that would justify the court's complete disregard of a deference to Liberty's decision here. Finally, plaintiff has argued, without any supporting authority, that Liberty should have provided plaintiff with another appeal following its October 6, 2006 decision because it was a new decision that required another appeal under the Department of Labor regulations.

---

[1] That approach was also rejected by the Ninth Circuit in *Abatie v. Alta Health & Life Insurance Co.*, 458 F.3d 955 (9th Cir. 2006.)

1    However, Liberty did not make a new decision on benefits: it simply reopened the appeal to conduct

2    additional review consistent with the court's instruction. (Request for Judicial Notice("RJN"), Exh. 2,

3    18:2-15.)

4          Although plaintiff attempts to pigeon-hole the present case into the facts of *Glenn*, the present

5    case is clearly distinguishable. Met Life had required Glenn to apply for Social Security, even

6    providing advocacy assistance, and then in very close proximity determined that Glenn was no longer

7    disabled under the Plan. In contrast, Cremin applied for Social Security benefits in accordance with

8    the Plan at the request of the prior claim administrator and was awarded Social Security benefits in

9    January of 1999, over three years before Liberty's denial of the claim. Unlike in Glenn, where the

10   administrative record included the administrative law judges decision on Social Security, there is

11   nothing in the file that demonstrates why and on what record Social Security reached its decision in

12   Cremin's favor in 1999or that it would be reached the same decision based upon the evidence in the

13   claim file as of 2002. Contrary to plaintiff's repeated insistence, there was a change in Cremin's

14   claim after 1999. For instance, Dr. Gershengorn indicated plaintiff could work full-time as of

15   December 2001, and in 2002 identified restrictions and limitations consistent with sedentary work.

16   Additionally, the frequency of plaintiff's psychiatric treatment had diminished to two to three times a

17   year, compared to the monthly therapy he had been receiving in 1999.

18          Additionally, plaintiff erroneously argues that, as in *Glenn*, Liberty "emphasized a certain

19   medical report that favored a denial of benefits". (Plaintiff's Suppl. Brief, p.3: 24-25). Liberty fully

20   considered all the records in its file, including all of the new records received in the reopened appeal

21   following remand. Liberty sought out specific information from plaintiff's identified treating

22   physicians, Dr. Gershengorn and Dr. Karelis Dr. Karelis refused to provide any records or share any

23   opinions with Liberty. Furthermore, plaintiff has asked the court to ignore Dr. Karelis, conceding he

24   is an unreliable convicted fraud. Dr. Gershengorn's opinions and records were fully considered and

25   his records were carefully reviewed by a highly qualified independent physician, Dr. Zwicke, who

26   concluded that plaintiff's cardiac condition would not preclude him from returning to work in a

27   sedentary occupation. Dr. Zwicke conferred with Dr. Gershengorn and her reports were sent to Dr.

28   Gershengorn for review. Thereafter, Dr. Gershengorn agreed with Dr. Zwicke's findings.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1    Plaintiff's position that Liberty ignored Dr. Morse's report by "not even accepting" it also

2  makes *Glenn* factually distinguishable.  Dr. Morse's identity was never disclosed to Liberty until her

3  report was sent *over two months* after the completion of Liberty's review.  Liberty had repeatedly

4  extended the time for plaintiff to submit additional records or reports.  Plaintiff's counsel made

5  repeated, vague statements that additional medical reports would be provided, but continuously failed

6  to provide any records or reports by his own stated time frames.  Liberty even waited an additional

7  two weeks that Mr. Padway requested on September 24, 2006.  Still nothing was provided, and no

8  other doctors were even identified.  That Liberty ultimately made its decision following the final two

9  week time period plaintiff's counsel requested, after having repeatedly extended the time and kept the

10  claim open for more than seven and a half months is not an abuse of discretion nor evidence a conflict

11  of interest affected its decision.  *Alford v. DCH Foundation Group Long Term Disability,* 311 F.3d

12  955, 958 (9th Cir. 2002).  Nor is it an abuse of discretion to refuse to consider the late submitted

13  report, submitted over two months after the conclusion of this appeal.  *Bendixen v. Standard Ins. Co.,*

14  185 F.3d 939, 944 (9th Cir. 1999).

15    Finally, plaintiff rests too much significance on Liberty not providing Dr. Mirkin's

16  supplemental report prior to its October 2006 decision.  Liberty continued to wait for Dr. Karelis's

17  response, or for any additional records germane to the psychological issues to be submitted before

18  contacting Dr. Mirkin.  Having received nothing further, Liberty requested Dr. Mirkin to clarify his

19  prior report, consistent with the court's guidance in its December 21, 2005 order.  Plaintiff hade

20  received Dr. Mirkin's prior report more than three years ago and Liberty sent it to Dr. Karelis on June

21  8, 2006 requesting his comments and assessment of the report.  Since neither plaintiff nor Dr. Karelis

22  responded, there is no reason to believe that providing plaintiff or Dr. Karelis with Dr. Mirkin's

23  supplemental report before would have made a difference.  The supplemental report was provided to

24  plaintiff on November 1, 2006.[2]  Although this court previously held that Liberty's failure to disclose

25  Dr. Mirkin's original report to plaintiff prior to upholding its initial decision on appeal, relying on

26

27  [2] Moreover, although plaintiff claims that somehow Dr. Morse's report responded, Dr. Morse was never even provided with any of Dr. Mirkin's reports, both of which were sent to plaintiff before Dr. Morse's untimely report was received.

28

1 *Abram v. Cargill, Inc.*, 395 F.3d 882 (8th Cir. 2005), the Ninth Circuit has come to a different

2 conclusion. *Silver v. Executive Care Leasing Long Term Disability Plan*, 466 F.3d 727 (9th Cir.

3 2006).   The Ninth Circuit stated :

> "We further reject Silver's argument that the District Court improperly
> admitted documents prepared by UNUM in the course of the
> administrative appeal.  Silver contends UNUM unfairly kept the
> record open for itself after closing the record to him, but there is no
> other way that UNUM could have addressed Silver's appeal except by
> waiting until he had submitted all of his material.  Simply put, in order
> for UNUM to evaluate Silver's administrative appeal fairly, it had to
> wait until he had submitted all of his materials; for UNUM to do
> otherwise would either undermine Silver's ability to present all of the
> supporting information or lead to an interminable back and forth
> between the plan administrator and the claimant.  Further, the
> paperwork generated by UNUM in the course of its review, was fully
> disclosed to Silver during the trial at the District Court, at which point
> Silver had ample opportunity to respond."

> *Id.* at 732; *See also, Metzger v. Unum Life Ins. Co. of Am.*, 476 F.3d
> 1161, 1166-67 (10th Cir. 2007).

13    The nature of Dr. Mirkin's supplemental report, the fact that plaintiff failed to responds to

14 previous requests for comments on Dr. Mirkin's first report, and plaintiff's receipt of the

15 supplemental report within weeks following the decision on appeal all demonstrate plaintiff was

16 afforded a full and fair review and no procedural violations existed that would cause this court to find

17 that Liberty abused its discretion here.

18    For the reasons set forth herein and in its brief in opposition to plaintiff's Rule 52 motion and

19 in support of its cross-motion, defendant McKesson Long Term Disability Plan is entitled to judgment

20 in its favor.  However, if the court rules in plaintiff's favor, defendant and real party and interest join

21 in plaintiff's request for further briefing on attorneys fees or prejudgment interest before the court

22 entertains any such award.

Dated: June 23, 2008

ROPERS, MAJESKI KOHN & BENTLEY

By: _____
PAMELA E. COGAN
Attorneys for Real Party In Interest
LIBERTY LIFE ASSURANCE COMPANY
OF BOSTON

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City